The CITY OF LAKE DALLAS et al., Appellants,

v.

LAKE CITIES MUNICIPAL UTILITY AUTHORITY, Appellee.

No. 17864.

Court of Civil Appeals of Texas, Fort Worth.

Aug. 4, 1977.

Rehearing Denied Sept. 8, 1977.

Shirley W. Peters, Denton, for appellants.

Jack Gray, Denton, William N. Stokes, Jr., Lake Dallas, and Gary Tim Banks, Denton, for appellee.

## OPINION

SPURLOCK, Justice.

This appeal is from a summary judgment which permanently enjoined the City of Lake Dallas from taking over the assets and assuming the liabilities of, or in any other way interfering with the operations of, the Lake Cities Municipal Utility Authority pursuant to two city ordinances. These ordinances purported to adopt the provisions of Tex.Rev.Civ.Stat.Ann. art. 1182c–1 (1963) and under such statutory authority, to abolish the Authority. The principal issue presented is whether the procedure contained in art. 1182c–1, § 2a may be used to abolish the Authority, instead of that in former Tex.Rev.Civ.Stat.Ann. art. 8280–293, § 17(a) (Water Auxiliary Laws, Table III, 1975 Pamphlet), which is now found in an amendment to the act by which the Authority was established. (Tex.Laws 1963, Ch. 312, *as amended by* Tex.Laws 1965, Ch. 599, § 3(a), at 1303).

We affirm.

The record reflects the following factual background. The City of Lake Dallas was incorporated for municipal purposes on September 30, 1960. Because of its history of political turmoil the City was unable to sell bonds in order to construct water and sewer facilities. As a result of this difficulty, and with septic tanks posing a serious health hazard to the community, legislation was sought to correct the problem and to meet the demands of state and county officials. Effective May 30, 1963, what was then known as the Lake Dallas Municipal Utility Authority was created by former Tex.Rev. Civ.Stat.Ann. art. 8280–293.* To finance its operations the Authority issued general obligation bonds, of which $340,000.00 remain outstanding and unpaid.

Under the original provisions of art. 8280–293, members of the Authority's board of directors were appointed by the Lake Dallas City Council, its tax rolls were those of the City, and its territory was coextensive with that of the City. When, on June 8, 1964, the City of Lake Dallas was disincorporated following a city-wide election, the Authority was left without tax rolls or a means to fill vacancies on its board of directors.

Although a new City of Lake Dallas was incorporated on April 19, 1965, an effort was made to prevent the recurrence of a situation which might again render the Authority unable to function. Effective June 17, 1965, an amendment to art. 8280–293 allowed the creation and election of a board of directors by eligible residents of the Authority so that it would be able to function independently of the City of Lake Dallas, Tex.Laws 1965, Ch. 599, § 2, at 1301.

During the period that the City of Lake Dallas was disincorporated, the Town of Hickory Creek annexed seventeen acres of what had been the old City of Lake Dallas. The Authority continued to serve the residents of that area. After another amendment to art. 8280–293 permitting the addition of land to the Authority's territory upon petition and hearing, the Authority added to its territory an area within the

---

* Art. 8280–293 is listed in Tex.Rev.Civ.Stat.Ann., Water Auxiliary Laws, Table III (1975 Pamphlet), an "Alphabetical Table of Districts Created And/Or Validated Pursuant to Const. art. 16, § 59," which gives the following explanation:

"Pursuant to Const. Art. 16, § 59, a number of water districts were created and/or validated by legislative act, many of which were classified to Title 128, Water, of Vernon's Texas Civil Statutes. They have *not* been repealed and are *not* carried into the Water Code. They have been dropped from Vernon's Texas Civil Statutes as special laws." (Emphasis added.)

The provisions of former art. 8280–293 are now contained only in Tex.Laws 1963, Ch. 312, *as amended by* Tex.Laws 1965, Ch. 599, Tex. Laws 1969, Ch. 136 and Tex.Laws 1975, Ch. 655.

corporate limits of the Town of Shady Shores. Tex.Laws 1969, Ch. 136, at 366. By contract the Authority also serves some areas of Denton County not within the corporate limits of any town or city.

In 1975 the Legislature again amended art. 8280–293 to reflect the new territorial limits of the Authority, changing its name from Lake *Dallas* Municipal Utility Authority to Lake *Cities* Municipal Utility Authority. Tex.Laws 1975, Ch. 655, at 1974.

On May 18, 1976, the Lake Dallas City Council passed the following ordinances:

I.

AN ORDINANCE OF THE CITY OF LAKE DALLAS, TEXAS ADOPTING THE PROVISIONS OF ARTICLE 1182c–1, VERNON'S ANNOTATED CIVIL STATUTES; AND DECLARING AN EFFECTIVE DATE.

WHEREAS, the City of Lake Dallas, Texas is desirous of taking over the assets and liabilities of the Lake Cities Municipal Utility Authority, and;

Article 8280–293 of Vernon's Annotated Civil Statutes created the Lake Cities Municipal Utility Authority effective May 30, 1963, and;

WHEREAS, the City of Lake Dallas, Texas was an incorporated City at the time of the adoption of Article 8280–293 and the formation of Lake Cities Municipal Utility Authority, but since that time the City of Lake Dallas, Texas has been dissolved and was incorporated again on April 19, 1965, and;

WHEREAS, the land comprising the incorporated city limits of the City of Lake Dallas, Texas, on April 19, 1965 was the same boundaries as existed for the City of Lake Dallas at the time the Lake Cities Municipal Utility Authority was created by the State Legislature;

NOW THEREFORE, THE CITY COUNCIL OF THE CITY OF LAKE DALLAS, TEXAS, HEREBY ORDAINS:

*SECTION I.*

That the City of Lake Dallas, Texas, hereby adopts the provisions of Article 1182c–1, Vernon's Annotated Civil Statutes of the State of Texas,

. . . . .

II.

AN ORDINANCE ABOLISHING THE LAKE CITIES MUNICIPAL UTILITY AUTHORITY AND ASSUMPTION OF THE ASSETS AND LIABILITIES OF SAID MUNICIPAL AUTHORITY BY THE CITY OF LAKE DALLAS, TEXAS; DECLARING AN EFFECTIVE DATE WHEN SAID CITY SHALL TAKE OVER AND ASSUME ALL DEBTS AND ASSETS OF THE LAKE CITIES MUNICIPAL UTILITY AUTHORITY; AND DECLARING AN EFFECTIVE DATE.

WHEREAS, the City of Lake Dallas, Texas has previously adopted the provisions of Article 1182c–1, Vernon's Annotated Civil Statutes, and;

WHEREAS, the services furnished and functions performed by the Lake Cities Municipal Utility Authority can be served and performed by the City of Lake Dallas, Texas, and;

WHEREAS, that it would be to the best interest of the citizens and property within said Lake Cities Municipal Utility Authority and the citizens and the property within the City of Lake Dallas, Texas that such Municipal Authority be abolished, and;

WHEREAS, the City of Lake Dallas, Texas is desirous of abolishing the Lake Cities Municipal Utility Authority and taking over the assets and liabilities of said Municipal Authority; now therefore THE CITY COUNCIL OF THE CITY OF LAKE DALLAS, TEXAS, HEREBY ORDAINS:

*SECTION I.*

That the City of Lake Dallas, Texas, pursuant to Article 1182c–1, Vernon's Annotated Civil Statutes hereby abolishes the Lake Cities Municipal Utility Authority and takes over the assets and liabilities of said Municipal Authority.

. . . . .

In response the Authority sought and obtained by summary judgment a permanent injunction against the City, its mayor,

Johnny J. Vinson, and city council members Roy V. Harper, W. L. Beene, James W. Hutto, J. C. Payne and Lee Roy W. Schramm, to prevent the take-over of the Authority.

The City's two points of error are that the trial court erred in assuming jurisdiction and granting the Authority's motion for summary judgment because in so doing, the court in essence held (1) that a quasi municipal corporation could maintain a suit to enjoin its own abolition despite the absence of a grant of the power to sue, and (2) that the Legislature was without authority to provide for abolishing a quasi municipal corporation by means of a city ordinance passed pursuant to art. 1182c–1.

The City in no way challenges the sufficiency of the proof offered in support of the Authority's motion for summary judgment; it attacks only the trial court's application of the law in this case.

The City's main argument under Point of Error Number One is that only the State of Texas may bring this action and that the court lacked jurisdiction to entertain a suit by a party lacking the legal authority to bring it. The City contends that even a municipality may exercise only such powers specifically granted it and those necessarily implied or incident to the powers expressly granted. As a quasi municipal corporation the Authority has still more limited powers: it has no powers beyond those clearly granted by the Legislature, and those powers granted will be strictly construed. The City argues that the Legislature's failure to grant the Authority the power to sue was intentional, citing other examples in which the power to sue has been specifically granted: to water control and improvement districts. (Tex.Water Code Ann. § 51.099 (1972)), to fresh water supply districts (Tex. Water Code Ann. § 53.088 (1972)), and to municipal utility districts (Tex.Water Code Ann. § 54.119 (1972)). The City further contends, without citation, that in 1963, the Legislature created several conservation and reclamation districts, including the Authority, and in all but one or two instances, expressly granted them the power to sue.

The City also argues that a municipal corporation lacks the implied power to sue to prevent its own dissolution and, by logical extension, so does a quasi municipal corporation.

The Authority contends, on the other hand, that the City's position is without merit because its plea in abatement (a) is insufficient in law to raise the issue of the Authority's capacity, (b) was not properly brought to the trial court's attention in order to obtain a ruling thereon, and (c) was waived when not made a part of and included in the City's motion for summary judgment.

The Authority further asserts that in any event, the contention that the Authority is without capacity to bring this action is also without merit.

We will first discuss the propriety of the City's challenge to the Authority's capacity to bring suit for injunctive relief.

■ The granting of the Authority's motion for summary judgment in this case does not, as the City contends, amount to a holding that a quasi municipal corporation may maintain a suit in the absence of a grant of power to sue. The City failed to challenge properly the Authority's alleged lack of capacity. If the City's challenge is based on its plea in abatement, it did not make any definite allegations concerning the Authority. It merely alleged that there were "*other* proper and necessary parties, to-wit; the State of Texas" (emphasis added), and it did not set forth the factual basis for this allegation. *Altgelt v. Texas Co.,* 101 S.W.2d 1104 (Tex.Civ.App.—Austin 1937, writ dism'd). Nor does the record reflect that the City sought and obtained a ruling on its plea. Having failed to do so, the City has waived any possible challenge to the Authority's capacity on the ground of nonjoinder of the State. *Watson v. Baker,* 67 Tex. 48, 2 S.W. 375 (1886); *Phillips v. Phillips,* 223 S.W. 243 (Tex.Civ.App.—Austin 1920, no writ).

■ The City's argument on appeal that the Authority is barred from maintaining this action because it lacks statutory au-

thority to do so is also waived. The City failed to plead as a bar to this action the alleged lack of statutory authority to sue and may not raise it for the first time on appeal. *Bank of Garvin v. Freeman,* 107 Tex. 523, 181 S.W. 187 (1915); *Phelps v. Connellee,* 285 S.W. 1047 (Tex.Com.App. 1926, jdgmt adopted).

The central question under the City's second point of error is which statute governs the method of abolition of the Authority: art. 1182c–1, § 2a (Supp.1976–77) of the general law or former art. 8280–293, § 17(a) which is contained in the act creating the Authority (Tex.Laws 1963, Ch. 312 *as amended by* Tex.Laws 1965, Ch. 599, § 3(a), at 1303.

The City relies on and acted in accordance with art. 1182c–1, § 2a (Supp.1976–77) which authorizes the governing body of a city to abolish any water control and improvement district, fresh water supply district or municipal utility district which has "heretofore been or which may hereafter be created out of territory which, at the time of such creation, was situated wholly within the corporate limits of any incorporated city . . . by a vote of not less than two-third (⅔) of the entire membership of its governing body. [The governing body may] adopt an ordinance abolishing such . . district if such governing body finds (a) that such district is no longer needed or (b) that the services furnished and functions performed by such district can be served and performed by the city and (c) that it would be to the best interests of the citizens and property within said district and the citizens and property within such city that such district be abolished. . . ."

The Authority argues in opposition that the attempted abolition is void because there was no "majority vote of the taxpaying qualified voters residing in such Authority at an election held for the purpose of determining whether or not such Authority shall be abolished," as required by art. 8280–293, § 17(a) (Tex.Laws 1965, Ch. 599, § 3(a), at 1303).

The City concedes that there might be some merit to the Authority's position that art. 8280–293, § 17(a), rather than art. 1182c–1, provides the exclusive method for abolition of the Authority if art. 8280–293 were a "special or local law."

We disagree with the City's implied categorization of art. 8280–293 as a general law and consequently cannot accept its primary contention.

The City cites three cases for its proposition that art. 8280–293 is not a local law: *County of Cameron v. Wilson,* 160 Tex. 25, 326 S.W.2d 162 (1959); *Brown v. Memorial Villages Water Authority,* 361 S.W.2d 453 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.); *Walling v. North Central Texas Mun. Water Authority,* 359 S.W.2d 546 (Tex.Civ. App.—Eastland 1962, writ ref'd n. r. e.). But in all three cases the challenge made and rejected was that the act creating the respective entities was a "local" or "special" law *within the meaning of the prohibition in Tex.Const. art. III, § 56,* which prohibits the passage of such laws concerning enumerated subjects "except as otherwise provided" in the Constitution. The City's apparent position is that an act is not local or special in any sense, if, though operating in a defined area, it also "operates on a subject in which the people of the State are interested, that is, the conservation and development of natural resources." *Brown, supra* at 456. Neither *Brown* nor the other two cases cited by the City support this position.

■ Article 8280–293 is unquestionably a "local or special" act. "A local act is an act applicable only to a particular part of the legislative jurisdiction. A special or private act is a statute operating only on particular persons or private concerns." *Vincent v. State,* 235 S.W. 1084, 1086 (Tex.Com.App. 1921, jdgmt adopted).

Thus we are presented with a conflict between the methods of abolition contained in the general law for water control and improvement districts, fresh water supply districts, and municipal utility districts (art. 1182c–1, § 2a) and that contained in a local law for the Authority (former art. 8280–293, § 17(a); Tex.Laws 1965, Ch. 599, § 3(a), at 1303).

█ To resolve this conflict we must look to the intent of the Legislature. The City argues that because the general law was passed after art. 8280–293, it was intended to control. But it is well settled that provisions in a general act will not control those in a local or special act unless there is clear evidence of such legislative intent. *Jefferson County v. Board of County and Dist. R. Indebt.,* 143 Tex. 99, 182 S.W.2d 908 (1944). In the absence of clear evidence that the Legislature intended the general law to control, the local or special act is deemed the more accurate reflection of legislative intent.

As a further indication of legislative intent concerning the Authority, we note that rather than referring to, or incorporating the general law concerning the method of abolition, art. 8280–293 spells out in detail the procedure to be followed. *Aikin v. Franklin County Water District,* 432 S.W.2d 520 (Tex.1968). In contrast, art. 8280–293 specifically incorporates the general law concerning elections held by the Authority (§ 14(d)) and condemnation (§ 9(a)).

█ Accordingly, we hold that former art. 8280–293, § 17(a) (Tex.Laws 1965, Ch. 599, § 3(a), at 1303), provides the exclusive procedure for abolition of the Authority. It is undisputed that the requirements of that statute for abolition of the Authority have not been met.

Having thus determined that art. 1182c–1, § 2a does not apply to the Authority, we need not discuss the City's arguments under Point of Error Number Two concerning the proper construction of that statute.

Both points of error having been considered and overruled, the judgment is affirmed.